364 S.E.2d 30

**ALLSTATE INSURANCE COMPANY, etc.**

**v.**

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, etc., Charles Nickerson, Jr., Charles Douglas Minor, etc., Kevin R. Cook, and Mary Cook.**

**No. 17612.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1987.

John L. Allen, Wheeling, for appellant.

Frederick E. Gardner, Moundsville, for appellee.

Robert W. Kagler, Moundsville, for the Cooks.

Charles D. Bell, Wellsburg, for Minor.

NEELY, Justice:

Appellant, Allstate Insurance Company, filed this declaratory judgment action asking the trial court to require appellee, State Automobile Mutual Insurance Company, to assume the defense of Charles Douglas Minor in a civil action pending in the Circuit Court of Marshall County,[1] and to require appellee to reimburse expenses incurred by Allstate in the investigation and defense of the claim. The matter was submitted to the court on Allstate's Motion for Summary Judgment. The court neither granted nor denied the motion, but ordered that the expense of defending Mr. Minor be shared equally between Allstate and State Auto. Both insurance companies appealed to this Court.

On February 29, 1980 Charles Douglas Minor went to a lumberyard in Moundsville, West Virginia to help load building materials into Charles Nickerson's Ford Bronco. While alone in the vehicle Mr. Minor turned the ignition key to activate the radio. The vehicle lurched backward and hit Kevin R. Cook, a lumberyard employee. Mr. Cook's complaint alleges that Mr. Minor was using the Ford Bronco owned by Mr. Nickerson with his permission. The court correctly concluded that the duty to defend Mr. Minor is to be determined by the insurance policies.

Mr. Nickerson's Bronco was insured under a standard automobile policy written by State Auto. That policy provides coverage to any licensed driver using the vehicle with Mr. Nickerson's permission.[2] All-

---

1. Circuit Court of Marshall County, West Virginia, Kevin R. Cook and Mary Cook, Plaintiffs, vs. Charles R. Nickerson, Jr. and Charles Douglas Minor, Defendants, Civil Action No. 82–C–78N.

2. The pertinent part of State Auto's policy asserts:
*Persons Insured.* Under the Liability and Medical Expense Coverages the following are insureds:

state's standard policy insured an automobile owned by Mr. Minor's father. That policy extended coverage to Mr. Minor, as a family member, when he was driving vehicles other than the principle vehicle insured.[3] Each policy contains a clause apportioning a loss when there is other, valid and collectible insurance (the pro-rata clause). Both policies provide that when an insured is using a non-owned automobile, the insurance provided by the policy is excess over any other valid and collectible insurance (the excess clause).[4]

Appellant contends that the lower court erred in apportioning the defense costs of a permissive user of an automobile between the insurer of the automobile and the permissive user's insurer in light of the almost universal rule making the automobile's insurer the primary carrier. We agree and reverse the lower court's ruling.

I

■ In *American Surety Co. v. Canal Ins. Co.*, 258 F.2d 934 (4th Cir.1958) the court said:

a) With respect to an owned automobile. (2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

3. Allstate's policy, in pertinent part, asserts the following persons are insured under this Section:
4. Any relative with respect to a non-owned private passenger automobile or trailer not regularly furnished for use of such relative, provided the use by such relative is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission.

4. The "excess clause" for each company states:
*State Auto*—If the insured has other insurance against a loss to which the Liability Coverage applies or other automobile insurance affording benefits for medical expenses against a loss to which the Medical Expenses Coverage applies, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute or non-owned automobile shall be excess insur-

"The common, and highly desirable, practice of including extended coverage clauses in automobile liability insurance contracts, sometimes leads to duplications of coverages. To resolve the questions inherent in such duplications of coverages, most policies incorporate excess insurance or 'other' insurance clauses which usually *follow the general rule that the policy insuring the liability of the owner of a described vehicle has the first and primary obligation* ...

Such excess insurance clauses serve a useful purpose in avoiding conflict. They are neither invalid nor unconscionable, and they may be given effect without invalidating a prorata contribution clause in the policy providing the other protection." [Emphasis added].
258 F.2d at 936. If the non-ownership coverage offered by one of the policies involved is "excess insurance" the conclusion is generally reached that the *policy issued to the owner* of the vehicle is the "primary" policy and the company issuing it is liable up to the limits of the policy without apportionment, although the policy contains a "pro-rata" clause.[5] Thus, the gen-

ance over any other valid and collectible insurance....
*Allstate*—All shall not be liable under this Section I for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance.

5. *See also, Allstate Insurance Company v. Atlantic National Ins. Co.*, 202 F.Supp. 85 (S.D.W.Va. 1962); *Henderson v. Selective Insurance Co.*, 369 F.2d 143 (6th Cir.1966); *Dairyland Mut. Ins. Co. v. Andersen*, 102 Ariz. 515, 433 P.2d 963 (1967); *Preferred Risk Mut. Ins. Co. v. Commercial Union Ins. Co.*, 121 Ga.App. 367, 173 S.E.2d 730 (1970); *Truck Ins. Exchange v. Torres*, 193 Cal. App.2d 483, 14 Cal.Rptr. 408 (1961); *London and Lancashire Ins. Co. v. Government Employees Ins. Co.*, 66 N.J.Super. 269, 168 A.2d 855 (1961); *Safeco Ins. Co. v. Pacific Indem. Co.*, 66 Wash.2d 38, 401 P.2d 205 (1965); *Thurston Nat. Ins. Co. v. Zurich Ins. Co.*, 296 F.Supp. 619 (W.D.Okla.1969); *Continental Casualty Co. v. Zurich Ins. Co.*, 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961); *Wrenn & Outlaw, Inc. v. Employers' Liability Assurance Corp.*, 246 S.C. 97, 142 S.E.2d 741 (1965); Annotation 76 A.L.R.2d 502–514 (1961).

eral statement of insurance law—"that insurance follows the automobile, rather than the driver." 8A Appleman, *Insurance Law and Practice*, § 4909.45 (1981).

For example, in *American Automobile Ins. Co. v. Republic Indem. Co.*, 52 Cal.2d 507, 341 P.2d 675 (1959), the California Supreme Court addressed a situation factually similar to the present case. There, Steinberg, an insured of American Automobile Insurance Company, was driving an automobile borrowed from Max Barish, Inc., an insured of Republic Indemnity Company. Steinberg was involved in an accident and a $5,000 judgment was entered against him and Max Barish, Inc. Because the limits of either policy were sufficient to cover the loss, a declaratory judgment action was filed to determine which policy was primary.

■ As in the case now before us, both policies provided pro-rating when there was other insurance to cover the loss with the additional provision that when the insured was driving a car not owned by him, the insurance was excess over other valid and collectible insurance. The court found in *American Auto* that Republic Indemnity, the insurer of the car owner, was primarily liable:

> "Where 'other insurance' clauses of this type appear in the automobile liability policies of both the driver and the owner, the cases have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy." (Citations omitted)

341 P.2d at 678.

The simple, bright-line rule of law that the primary obligation to defend and indemnify follows the automobile, rather than the driver, facilitates an orderly determination of priorities among carriers insuring the same risk. These cases are based on the reasoning that the policy of the owner is other insurance within the meaning of the excess provision of the driver's policy and that, therefore, this provision is effective; they do not consider the driver's policy as other insurance within the mean-

ing of the pro-rata provision of the owner's policy and accordingly treat the pro-rata provision as not operative. We conclude that the result reached in the cases cited above is correct. Therefore, we hold that State Automobile Insurance Company has the primary coverage in this case because it insured Mr. Nickerson's car. Consequently, State Automobile has the primary duty to defend Charles Douglas Minor.

## II

■ Appellant next argues that instead of apportioning the litigation costs between Allstate and State Auto, the lower court should have awarded Allstate its costs and attorney's fees incurred in defending Mr. Minor. We agree. Because State Auto refused to defend Mr. Minor, Allstate assumed the defense and instituted this declaratory judgment action to require State Auto to live up to the terms of its policy.

There are no West Virginia cases that have considered this precise issue. However, in *Aetna Casualty and Surety Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), we held that an insurer which wrongfully refused to defend its insured was liable for both the costs of the insured's defense and the costs of prosecuting a declaratory judgment action seeking to require the insurer to defend. Syllabus Point states: "Where a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation." This same principle extends logically to the facts before us: Allstate is entitled to recover both its costs of defending the insured as well as its costs of prosecuting the action.

West Virginia is not alone in applying this rule. In *Fidelity and Casualty Co. of New York v. Secured Casualty Co.*, 180 N.E.2d 297 (Ohio App.1961), the court held that an employer's liability insurer, which provided only excess coverage for the use of a non-owned vehicle, could recover its costs and attorney fees insured in defend-

ing the driver of a non-owned vehicle when the vehicle's insurer refused to defend the driver. The *Fidelity* court reasoned that the driver's insurer, as an excess carrier, had a right to reimbursement on a subrogation theory. 180 N.E.2d at 302. *See also, State Farm Mut. Auto Ins. Co. v. Foundation Reserve Ins. Co.*, 78 N.M. 359, 431 P.2d 737 (1967); *Zurich Ins. Co. v. New Amsterdam Casualty Co.*, 117 Ga.App. 426, 160 S.E.2d 603 (1968).

Combining the reasoning of these cases with our holding in *Pitrolo*, we hold that the lower court erred in apportioning the costs between Allstate and State Auto. Because State Auto is the primary insurer in this case, Allstate, as excess carrier, should recover in subrogation the sums it expended in defense of Mr. Minor. This holding simply denies a windfall to the insurer which wrongfully refused to defend, while not penalizing the insurer who recognized its obligations. At the same time, our holding does not affect the total amount of coverage available to the insured; it goes exclusively to the allocation of the total between the two carriers.

For the reasons set forth above, the judgment of the Circuit Court of Marshall County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.