## Richmond

AMERICAN MOTORISTS INSURANCE COMPANY V. PHYLLIS B. KAPLAN, ET AL.

June 10, 1968.

Record No. 6726.

Present, All the Justices.

*William E. Baggs* (*Breeden, Howard & MacMillan*, on brief), for appellant.

*Robert M. Furniss; Jerrold G. Weinberg* (*Furniss and Davis; Stackhouse & Weinberg*, on brief), for appellees.

SNEAD, J., delivered the opinion of the court.

As a result of an automobile accident, Phyllis B. Kaplan secured a judgment against Leslie G. John in the sum of $377.25 for personal injuries. She also suffered a loss of $100 for property damage not covered by her collision insurance. John did not pay the debt owed Kaplan. On May 23, 1966, Kaplan filed a motion for a declaratory judgment against American Motorists Insurance Company, appellant, hereinafter called American, Government Employees Insurance Com-

pany and John. Kaplan sought the court's construction of two policies of liability insurance issued by American and Government Employees respectively and a judgment against such of the insurance companies as may be liable to her for the judgment she obtained against John and also for the property damage she incurred.

Government Employees and John filed a joint answer and grounds of defense. They alleged that the American policy provided primary coverage for the accident, and that Government Employees only provided excess coverage. In addition, Government Employees filed a cross-claim against American in the sum of $710 for legal expenses it had incurred while defending John in the action brought by Kaplan.

In its answer, American denied that its policy afforded primary coverage for the accident, but stated that the policy provided excess coverage.

The case was heard in the trial court on October 10, 1966, along with *Hardware Mutual Casualty Company, et al.* v. *Celina Mutual Insurance Company, et al.*, Record No. 6727 this day decided, because both cases involved identical issues.

The stipulated facts may be summarized as follows:

On October 21, 1965, Leslie G. John went to the John Copeland Motor Company in Norfolk to inspect certain automobiles that the company owned and had for sale. While there he was permitted to test drive one of the cars. The vehicle was equipped with the company's dealer license plates, and was insured by American under a garage liability policy.

While test driving the automobile in Norfolk, John collided with a vehicle operated by Kaplan. Kaplan later recovered a judgment against John in the sum of $377.25 and incurred property damage of $100. Government Employees defended John at the trial and incurred expenses of $710 for attorney fees and costs.

At the time of the accident, there was in effect a standard family automobile liability policy issued by Government Employees to Freddie L. Creef, stepfather of John. Under its terms John was an insured. The policy contained a clause designated "Other Insurance" which provides:

"Other Insurance: If the insured has other insurance against a loss covered by Part I [Bodily injury and property damage liability] of this policy—the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability

of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Italics supplied.)

The garage liability policy issued by American to John Copeland Motor Company had attached to it an endorsement specified as "Auto 89—Limited Coverage for Certain Insureds". In consideration of a reduced premium the endorsement amended paragraph 3 of "Persons Insured" under the policy to read:

"(3) With respect to an automobile to which the insurance applies under paragraph 1 (a) of the Automobile Hazards, any of the following persons while using such automobiles with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission:

"(a) Any employee, director or stockholder of the named insured, any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner,

"(b) Any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the State in which the automobile is principally garaged, is available to such person; * * *."

It was further stipulated that Kaplan was entitled to recover from either American or Government Employees, and it was conceded by American that without the above escape clause (b) its policy would furnish primary coverage.

By letter opinion, the trial court ruled that the "no liability" or "escape" provisions of the garage policy issued by American was repugnant to the mandatory terms of Code, § 38.1-381(a), *infra*, and was therefore void; that the garage policy furnished primary coverage, and that Government Employees was entitled to recover the defense costs from American.

On December 21, 1966, an order was entered declaring that the garage policy issued by American had the primary coverage on the automobile owned by the John Copeland Motor Company and operated by John. Kaplan was awarded a judgment against American for her damages in the amount claimed, and Government Employees was rendered a judgment for $710 on its cross-claim against Ameri-

can. As a result of the entry of this order we granted American a writ of error.

In its assignments of error, American contends in essence that the trial court erred (1) in ruling that its policy provided primary coverage rather than the policy issued by Government Employees; (2) in rendering judgment against American in favor of Kaplan for $477.25, and (3) in rendering judgment for Government Employees on its cross-claim for $710 against American.

In our view the dominant issues presented are (1) whether the exclusionary provision "(3)(b)", *supra*, contained in the policy issued by American is valid when considered in light of the omnibus clause requirements of Code, § 38.1-381(a), and (2) if the exclusion is valid, to what extent is it applicable here.

In the present case we have two policies of liability insurance issued by different companies to different policy holders. The liability of each company must be determined by the terms of its own policy, subject to such modification as may be imposed by statute. It is clear that each policy would provide coverage to Kaplan had the other policy not been in existence.

At the time of the accident Code, § 38.1-381 provided in part:

"(a) No policy or contract of bodily liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle * * * shall be issued or delivered in this State * * * unless it contains a provision insuring the named insured and any other person responsible for the use of or using the motor vehicle * * * with the consent, expressed or implied, of the named insured, against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle * * *." (1964 Cum. Supp.)

After this cause of action arose, the 1966 General Assembly enacted subsections (a1) and (a2) and the 1968 General Assembly enacted subsection (a3). Subsections (a2) and (a3) are printed in the margin.[1]

---

[1] Section 38.1-381.

"(a2) Any endorsement, provision or rider attached to, or included in, any such policy of insurance which purports or seeks in any way to limit or reduce in any respect the coverage afforded by the provisions required therein by this section shall be wholly void." 1966 Acts of Assembly, ch. 182, p. 459.

"(a3) Such policy or contract of bodily injury liability insurance, or of property damage liability insurance, which provides insurance to a named insured against lia-

American contends, among other things, that § 38.1-381(a) does not require that the named insured or a permissive user be insured against all liability but only such liability "occasioned within the coverage of the policy." It argues that the statute means "you must insure the permissive user against liability for death or injury as a result of negligence within the coverage of the policy. If the permissive user is to be insured 'within the coverage of the policy' then there is no direct prohibition against limiting the coverage or limits of liability as it applies to a permissive user."

On the other hand, Government Employees maintains, *inter alia*, that § 38.1-381(a) requires that a permissive user be given the same coverage as a named insured, and that because the exclusionary or escape clause, "(3)(b)", *supra*, contained in American's policy, if given effect, would not extend the same coverage, it is void.

In support of its position, Government Employees cites three cases decided by separate courts of record of this State which, in addition to the court below, hold that an escape clause identical to that contained in American's policy is invalid as being an improper limitation on the language of § 38.1-381(a). It also cites *Maryland Casualty Co.* v. *Burley*, 345 F.2d 138 (4th Cir.) and *Pulley* v. *Allstate*, 242 F.Supp. 330. There the same result was reached by following the interpretation of the statute placed upon it by the courts of record since this court had not spoken on the question.

*Lumbermens Mutual Cas. Co.* v. *Indemnity Ins. Co.*, 186 Va. 204, 42 S.E.2d 298, involved an owner's policy which contained a provision excluding from the definition of "insured" the owner or anyone else when operating the automobile in connection with a service station, etc. The owner called a service station mechanic to pick up his disabled car. While he was driving it with the owner's consent

---

bility arising from the ownership, maintenance or use of any motor vehicle in the business of selling, repairing, servicing, storing or parking motor vehicles may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured and his employees in the course of their employment shall not be applicable, if there is any other valid and collectible insurance applicable to the same loss covering such person under a policy with limits at least equal to the financial responsibility requirements specified in § 46.1-504 of the Code of Virginia.

"In the event that such other valid and collectible insurance has limits less than the financial responsibility requirements specified in § 46.1-504 of the Code of Virginia, then the coverage afforded a person other than the named insured and his employees in the course of their employment shall be applicable to whatever extent may be necessary to equal the financial responsibility requirements specified in § 46.1-504 of the Code of Virginia. 1968 Acts of Assembly, ch. 199, p. 274.

he became involved in an accident. It was contended that the exclusionary provision or restriction on the use of the car in the owner's policy was without legal effect because it was contrary to the statute (then § 4326a, Code 1942) requiring the omnibus clause. This court upheld the restriction and stated that the statute required "every automobile liability policy sold in Virginia to contain an omnibus clause extending the *same coverage* as that given the named insured to one legally operating the car with the owner's permission, express or implied." (Italics supplied.) We further said:

"This construction does not mean that the owner of a motor vehicle is compelled to carry liability insurance, nor does it mean that the insured and the insurer may not agree to incorporate in their contract reasonable restrictions of coverage as to time, place, use and as to injuries." 186 Va. at 213, 42 S.E.2d at 302.

In *Lumbermens*, the excluded coverage applied with equal force to both the named insured and permissive users.

In the case at bar the coverage provided a permissive user under American's policy is conditional. It affords protection to the permissive user "only if no other valid and collectible automobile liability insurance, either primary or excess * * * is available * * *." The restriction denies any protection to a permissive user under the policy who has other valid and collectible automobile liability insurance available to him. In our view, § 38.1-381(a) requires each policy of automobile liability insurance to furnish a permissive user the same coverage as is afforded the named insured.

On the other hand, we find that the "excess" provision relating to the operation of a non-owned vehicle contained in the policy of Government Employees is a valid limitation of coverage. The omnibus statute (§ 38.1-381(a)) does not require that coverage be afforded a permissive user of a non-owned vehicle. It only requires that the owner's policy extend coverage to a permissive user for liability "resulting in the operation or use of such [owner's] vehicle * * *."

As has been said, American concedes that without the escape or exclusionary clause embodied in its policy, it would be primarily liable for Kaplan's loss. Having reached the conclusion that the clause violates § 38.1-381(a) and is void we find that the trial court was correct in holding American primarily liable for Kaplan's loss as well as for the expenses incurred by Government Employees in defending John.

Phyllis Kaplan assigned cross-error alleging that the court erred in failing to enter judgment in her favor against Government Employees or against both Government Employees and American. In view of our decision affirming her judgment against American, it becomes unnecessary to discuss this assignment of error.

The judgment appealed from is

*Affirmed.*