## CIRCUIT COURT OF THE CITY OF NORFOLK

Pennsylvania National
Mutual Casualty Ins. Co.

    v.

Transit Casualty Co.,
Sharon A. Pauze, and
R. Cross, Inc.

August 12, 1983

Case No. (Law) L-82-2247

By JUDGE JOHN W. WINSTON

Sharon A. Pauze was the operator of a "temporary substitute automobile" owned by R. Cross, Inc., d/b/a American International Rent-A-Car when that automobile was involved in an accident on July 18, 1981, causing bodily injury to third parties who have filed damage suits against her.

*Mrs. Pauze* was insured by Pennsylvania National against bodily injury claims resulting from her operation of a "temporary substitute automobile," as defined in its policy, but such policy provides that "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance." (*Exhibit P1*: Family Combination Automobile Policy # 100-53-53-96 issued by Pennsylvania National, Part 1 Liability, Other Insurance.)

The "temporary substitute automobile" involved in the accident was leased by Mrs. Pauze from its owner R. Cross, Inc., etc. and was insured by Transit Casualty Company against third party bodily injury claims. That Company's policy provides very adequate limits of coverage ($1,000,000) but extends such coverage only to the named insured R. Cross, Inc., etc., and to the additional insureds

identified as such in Endorsements made a part of the policy. Such additional insureds do not include Mrs. Pauze or like lessees or renters. Furthermore, that policy specifically provides for no bodily injury coverage to any lessee or renter above the limits set out in the written lease or rental agreement issued by the named insured R. Cross, Inc., etc. (*Exhibit D1*: Transit Casualty Company automobile policy # CA95159 including Endorsement No. 2.)

No bodily injury coverage limit at all is included in the temporary substitute rental agreement as issued by R. Cross, Inc. (American International Rent-A-Car) and signed by Mrs. Pauze. Such rental agreement recites that:

> 6. Customer understands and agrees that Lessor is not obligated by any terms of this Agreement to provide liability insurance protection to customer, and customer agrees that he shall be individually responsible for and shall comply with the safety responsibility insurance laws of the state in which the vehicle is rented and/or operated and that Lessor and those in privity with Lessor shall not be directly or indirectly responsible for the negligence or carelessness of the customer in the operation of the vehicle rented herein. Customer agrees to indemnify Lessor and its insurance carrier for any and all loss, damage, cost and expense paid or incurred by either Lessor or its insurance carrier, or both, because of the injuries or damages sustained by or caused by occupants or others by reason of negligence or otherwise of the customer. Customer shall immediately report in writing any accident to Lessor and customer shall cooperate fully with Lessor and Lessor's insurance carrier in all matters connected with the investigation, the defense and prosecution of any claim or suit to it.

And it further states that "This Is A Temporary Substitute Vehicle Rental. Under The Terms Of This Agreement, The Lessor Furnished No Liability Insurance." Mrs. Pauze listed on the agreement the name of her insurance company Penn-

sylvania National, her policy number as 100-535396, and the policy expiration date as October 20, 1981. She then signed the agreement directly below the printed statement that "I have read the terms and conditions on page 1 (other side) and page 2 of this agreement and agree thereto." (Exhibit D2.)

Pennsylvania National asks this Court to declare that Transit Casualty Company's policy is required by law to provide bodily injury coverage and a defense to Mrs. Pauze for the consequences of her accident and that Pennsylvania National's policy coverage is excess only. On the contrary Transit Casualty Company asks the Court to declare that its policy does not cover the consequences of that accident.

Virginia Code § 38.1-381(a) as amended provides that:

> No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle . . . shall be issued or delivered in this Commonwealth to the owner of such vehicle . . . unless it contains a provision insuring the named insured and any other person responsible for the use of or using the motor vehicle . . . with the consent, express or implied, of the named insured, against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as the result of negligence in the operation or use of such vehicle . . . by the named insured or by any such person . . . .

And Virginia Code § 38.1-381(a2) adds that:

> Any endorsement, provision, or rider attached to, or included in, any such policy of insurance which purports or seeks in any way to limit or reduce in any respect the coverage afforded by the provisions required therein by this section shall be wholly void.

These Code sections (and the remaining parts of Section 38.1-381) voice the public policy of Virginia which by the force of their provisions are part of every policy or contract of liability insurance issued or delivered in this state. *Storm v. Nationwide Ins. Co.*, 199 Va. 130 (1957). They were enacted for the benefit of any party who has suffered damage from the negligent operation or use of the insured vehicle when operated by another person with the permission of the owner. And every such automobile liability policy or contract will be considered to contain an omnibus clause extending coverage to one legally operating such vehicle with the owner's permission. Thus even though parties in non-automobile situations may contract as they wish regarding insurance (*see Walker v. Vanderpool*, 225 Va. 266 (1983)) no insurer may contract away the Virginia statutory omnibus clause, either directly or indirectly, to the possible detriment of third parties.

That is what Transit Casualty Company has attempted to do by the wording of Endorsement 2 of its policy. Because of the provisions of Code § 38.1-381 it cannot provide less coverage to lessees and renters of vehicles it insures than it does to its named insured and named additional insureds. Nor can it rely upon any contrary contractual arrangement between its named insured and any permissive use renter or lessee as a basis for any argument that the plain requirement of the statute that it provide equal coverage to permissive users of insured vehicles can be disregarded and made of no effect.

Endorsement 2 to Transit Casualty Company's policy is declared to be void and unenforceable here. This court therefore holds that Transit Casualty Company must cover Mrs. Pauze for the consequences of her accident including the defense of the third party claims asserted against her. Pennsylvania National's coverage is found to be excess only. *American Motorists Insurance Co. v. Kaplan*, 209 Va. 53 (1968); *Hardware Mutual v. Celina Mutual*, 209 Va. 60 (1968).